# EMPLOYEE AGREEMENT

This Employee Agreement ("**Agreement**") is entered into by and between CRUBIN LLC, a Florida limited liability company (the "**Employer**") on behalf of itself, its subsidiaries and other corporate and company affiliates (collectively referred to herein as, the "**Employer Group**"), and Jesus Alex Escoriaza (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of October 19, 2016 (the "**Effective Date**").

In consideration of the Employee's employment by the Employer and offering other benefits associated with such position as of October 19, 2016, which the Employee acknowledges to be good and valuable consideration for his obligations hereunder, the Employer and the Employee hereby agree as follows:

1.     Confidential Information.   The Employee understands and acknowledges that during the course of employment by the Employer, he will have access to and learn about Confidential Information, as defined below.

   (a)     Confidential Information Defined

   For purposes of this Agreement, "**Confidential Information**" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, databases, manuals, records, systems, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, market studies, sales information, revenue, costs, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, customer information, customer lists, client information, client lists, distributor lists, and buyer lists of the Employer Group or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

   The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise

COMPOSITE
EXHIBIT A

identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information includes information developed by him in the course of his employment by the Employer as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

(b)     Employer Creation and Use of Confidential Information

The Employee understands and acknowledges that the Employer Group has invested, and continues to invest, substantial time, money and specialized knowledge into developing its resources, creating a customer base, generating customer and potential customer lists, training its employees, and improving its offerings in the field of ticket brokerage and sport entertainment services. The Employee understands and acknowledges that as a result of these efforts, Employer Group has created, and continues to use and create Confidential Information. This Confidential Information provides Employer Group with a competitive advantage over others in the marketplace.

(c)     Disclosure and Use Restrictions

The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer Group) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of the President, acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of President acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent

jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to the President.

The Employee understands and acknowledges that his obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he begins employment by the Employer) and shall continue during and after his employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.    Restrictive Covenants.

(a)    Acknowledgment

The Employee understands that the nature of Employee's position gives him access to and knowledge of Confidential Information and places him in a position of trust and confidence with the Employer Group.   The Employee understands and acknowledges that the intellectual services he provides to the Employer Group are unique, special or extraordinary because of his strong financial background, technical expertise, general knowledge of sporting events, and relationships with potential clients and vendors related to Employer's business.

The Employee further understands and acknowledges that the Employer Group's ability to reserve these for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer Group, and that improper use or disclosure by the Employee is likely to result in unfair or unlawful competitive activity.

(b)    Non-competition

Because of Employer Group's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for the eighteen (18) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer Group, the Employee agrees and covenants not to engage in Prohibited Activity in any geographic area in which the Employer Group distributes its products or provides its services.

For purposes of this non-compete clause, **"Prohibited Activity"** is activity in which the Employee contributes his knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an

entity engaged in the same or similar business as the Employer Group, including those engaged in the business of ticket brokerage and sport entertainment services (a "**Competing Business**"). Prohibited Activity also includes activity that may require or inevitably require disclosure of trade secrets, proprietary information or Confidential Information.

Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to the President.

(c)     Non-solicitation of Employees

The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer Group during eighteen (18) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer.

(d)     Non-solicitation of Customers

The Employee understands and acknowledges that because of the Employee's experience with and relationship to the Employer Group, he will have access to and learn about much or all of the Employer Group's customer information. "**Customer Information**" includes, but is not limited to, names, phone numbers, addresses, e-mail addresses, order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to the customer and relevant to sales and services.

The Employee understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm.

The Employee agrees and covenants, during eighteen (18) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer, not to directly or indirectly solicit, contact (including but not limited to e-mail, regular mail, express mail, telephone, fax, and instant message), attempt to contact or meet with the Employer's current, former or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer.

3.    Non-disparagement.  The Employee agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order.  The Employee shall promptly provide written notice of any such order to the President.

4.    Acknowledgement.  The Employee acknowledges and agrees that the services to be rendered by him to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the restrictive covenants and other terms and condition of this Agreement are reasonable and reasonably necessary to protect the legitimate business interest of the Employer Group.

The Employee further acknowledges that the amount of his compensation reflects, in part, his obligations and the Employer's rights under this Agreement; that he has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he will not be subject to undue hardship by reason of his full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time.

Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

5.    Remedies.  In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.  The aforementioned equitable relief shall

be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

6.   Successors and Assigns.

   (a)   Assignment by the Employer

      To the extent permitted by state law, the Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer.   This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns.

   (b)   No Assignment by the Employee

      The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

7.   Work Product. Employee acknowledges that all work product created by Employee related to the Employer's business or contemplated business, including but not limited to, any original works of authorship, inventions, discoveries, proposals and ideas, whether alone or jointly with others, shall be deemed a "work made for hire" as defined by the United States Copyright Act and are protected in accordance therewith. To the extent that such work is not, by operation of law, a work made for hire, Employee herby transfers and assigns to Employer all his/her right, title and interest therein.

8.   Warranty.  Employee represents and warrants that he is not a party to any non-compete restrictive covenant or related contractual limitation that would interfere with or hinder his ability to undertake the obligations and expectations of employment with the Employer.

9.   Governing Law: Jurisdiction and Venue.  This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles.  Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Palm Beach.  The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

10.   Entire Agreement.  Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer Group  pertaining  to  the  subject  matter  hereof  and  supersedes  all  prior  and

contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

11.    Modification and Waiver.  No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the President.  No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

12.    Severability.  Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.

The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

13.    Captions.    Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

14.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

15.     Tolling.  Should the Employee violate any of the terms of the restrictive covenant obligations articulated herein, the obligation at issue will run from the first date on which the Employee ceases to be in violation of such obligation.

16.     Attorneys' Fees.  Should the Employee breach any of the terms of the restrictive covenant obligations articulated herein, to the extent authorized by state law, the Employee will be responsible for payment of all reasonable attorneys' fees and costs that Employer incurred in the course of enforcing the terms of the Agreement, including demonstrating the existence of a breach and any other contract enforcement efforts.

17.     Notice.  If and when Employer's employment with Employer Group terminates, whether voluntarily or involuntarily, Employee agrees to provide to any subsequent employer a copy of this Agreement.  In addition, Employee authorizes Employer Group to provide a copy of this Agreement to third parties, including but not limited to, Employee's subsequent, anticipated or possible future employer.

[SIGNATURE PAGE FOLLOWS]

Strictly Confidential
Bill Dinon

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

**CRUBIN, LLC,**
a Florida Limited Liability Company

By: _____

Name:  COLE RUBIN

Title:  Manager

EMPLOYEE

Signature: _____
Jesus Alex Escoriaza

Strictly Confidential
Bill Dinon

## EMPLOYEE NON-COMPETE AGREEMENT

This Employee Non-compete Agreement ("**Agreement**") is entered into by and between CRUBIN, INC., a Florida corporation (the "**Employer**") on behalf of itself, its subsidiaries and other corporate and company affiliates (collectively referred to herein as, the "**Employer Group**"), and ALEX ESCORIAZA (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of November 16, 2012 (the "**Effective Date**").

In consideration of the Employee's employment by the Employer and a promotion to the new position of Director of Pricing of the Employer and offering other benefits associated with such position on November 16, 2012, which the Employee acknowledges to be good and valuable consideration for his obligations hereunder, the Employer and the Employee hereby agree as follows:

1. <u>Confidential Information</u>.  The Employee understands and acknowledges that during the course of employment by the Employer, he will have access to and learn about Confidential Information, as defined below.

      (a)    Confidential Information Defined

For purposes of this Agreement, "**Confidential Information**" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, databases, manuals, records, systems, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, market studies, sales information, revenue, costs, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, customer information, customer lists, client information, client lists, distributor lists, and buyer lists of the Employer Group or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information includes information developed by him in the course of his employment by the Employer as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

(b)     Employer Creation and Use of Confidential Information

The Employee understands and acknowledges that the Employer Group has invested, and continues to invest, substantial time, money and specialized knowledge into developing its resources, creating a customer base, generating customer and potential customer lists, training its employees, and improving its offerings in the field of ticket brokerage and sport entertainment services. The Employee understands and acknowledges that as a result of these efforts, Employer Group has created, and continues to use and create Confidential Information. This Confidential Information provides Employer Group with a competitive advantage over others in the marketplace.

(c)     Disclosure and Use Restrictions

The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer Group) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of the President, acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of President acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall

2

be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to the President.

The Employee understands and acknowledges that his obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he begins employment by the Employer) and shall continue during and after his employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.  Restrictive Covenants.

    (a)  Acknowledgment

The Employee understands that the nature of Employee's position gives him access to and knowledge of Confidential Information and places him in a position of trust and confidence with the Employer Group. The Employee understands and acknowledges that the intellectual services he provides to the Employer Group are unique, special or extraordinary because of his knowledge of pricing tickets for admission to sporting events, general knowledge of sporting events, and relationships with potential clients and vendors related to Employer's business.

The Employee further understands and acknowledges that the Employer Group's ability to reserve these for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer Group, and that improper use or disclosure by the Employee is likely to result in unfair or unlawful competitive activity.

    (b)  Non-competition

Because of Employer Group's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for the eighteen (18) months , to run consecutively, beginning on the last day of the Employee's employment with the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer Group, the Employee agrees and covenants not to engage in Prohibited Activity in any geographic area in which the Employer Group distributes its products or provides its services.

For purposes of this non-compete clause, **"Prohibited Activity"** is activity in which the Employee contributes his knowledge, directly or indirectly, in whole or in

3

part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an entity engaged in the same or similar business as the Employer Group, including those engaged in the business of ticket brokerage and sport entertainment services (a "**Competing Business**").  Prohibited Activity also includes activity that may require or inevitably require disclosure of trade secrets, proprietary information or Confidential Information.

Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order.  The Employee shall promptly provide written notice of any such order to the President.

(c)   Non-solicitation of Employees

The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer Group during eighteen (18) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer.

(d)   Non-solicitation of Customers

The Employee understands and acknowledges that because of the Employee's experience with and relationship to the Employer Group, he will have access to and learn about much or all of the Employer Group's customer information. "**Customer Information**" includes, but is not limited to, names, phone numbers, addresses, e-mail addresses, order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to the customer and relevant to sales and services.

The Employee understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm.

The Employee agrees and covenants, during eighteen (18) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer, not to directly or indirectly solicit, contact (including but not limited to e-mail, regular mail, express mail, telephone, fax, and instant message), attempt to contact or meet with the Employer's current, former or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer.

4

3.   <u>Non-disparagement</u>.  The Employee agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order.  The Employee shall promptly provide written notice of any such order to the President.

4.   <u>Acknowledgement</u>.  The Employee acknowledges and agrees that the services to be rendered by him to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the restrictive covenants and other terms and condition of this Agreement are reasonable and reasonably necessary to protect the legitimate business interest of the Employer Group.

The Employee further acknowledges that the amount of his compensation reflects, in part, his obligations and the Employer's rights under this Agreement; that he has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he will not be subject to undue hardship by reason of his full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time.

Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

5.   <u>Remedies</u>.  In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.  The aforementioned equitable relief shall

5

be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

6.     Successors and Assigns.

    (a)     Assignment by the Employer

       To the extent permitted by state law, the Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns.

    (b)     No Assignment by the Employee

       The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

7.     Warranty. Employee represents and warrants that he is not a party to any non-compete restrictive covenant or related contractual limitation that would interfere with or hinder his ability to undertake the obligations and expectations of employment with the Employer.

8.     Governing Law; Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Palm Beach. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

9.     Entire Agreement. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer Group pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

10.     Modification and Waiver. No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the President. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by

either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

11.   Severability.   Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.

The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

12.   Captions.   Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

13.   Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

14.   Tolling.   Should the Employee violate any of the terms of the restrictive covenant obligations articulated herein, the obligation at issue will run from the first date on which the Employee ceases to be in violation of such obligation.

15.   Attorneys' Fees.   Should the Employee breach any of the terms of the restrictive covenant obligations articulated herein, to the extent authorized by state law, the Employee will be responsible for payment of all reasonable attorneys' fees and costs that Employer incurred in the course of enforcing the terms of the Agreement, including demonstrating the existence of a breach and any other contract enforcement efforts.

16.    <u>Notice</u>.  If and when Employer's employment with Employer Group terminates, whether voluntarily or involuntarily, Employee agrees to provide to any subsequent employer a copy of this Agreement.  In addition, Employee authorizes Employer Group to provide a copy of this Agreement to third parties, including but not limited to, Employee's subsequent, anticipated or possible future employer.

[SIGNATURE PAGE FOLLOWS]

Strictly Confidential
Bill Dinon

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

**CRUBIN, INC.,**
a Florida Corporation

By: _____

Name:  Cole Rubin
Title:  President, Crubin, Inc.

EMPLOYEE

Signature: _____
                Alex Escoriaza

9

# EMPLOYEE AGREEMENT

This Employee Agreement ("**Agreement**") is entered into by and between CRUBIN LLC, a Florida limited liability company (the "**Employer**") on behalf of itself, its subsidiaries and other corporate and company affiliates (collectively referred to herein as, the "**Employer Group**"), and Jesus "Alex" Escoriaza (the "**Employee**") (the Employer and the Employee are collectively referred to herein as the "**Parties**") as of January 1, 2017 (the "**Effective Date**").

In consideration of the Employee's employment by the Employer and offering other benefits associated with such position as of January 1, 2017, which the Employee acknowledges to be good and valuable consideration for his obligations hereunder, the Employer and the Employee hereby agree as follows:

1.     <u>Confidential Information</u>.   The Employee understands and acknowledges that during the course of employment by the Employer, he will have access to and learn about Confidential Information, as defined below.

(a)     Confidential Information Defined

For purposes of this Agreement, "**Confidential Information**" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to: business processes, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, databases, manuals, records, systems, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, market studies, sales information, revenue, costs, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, unpublished patent applications, customer information, customer lists, client information, client lists, distributor lists, and buyer lists of the Employer Group or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise

identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information includes information developed by him in the course of his employment by the Employer as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

(b)     Employer Creation and Use of Confidential Information

The Employee understands and acknowledges that the Employer Group has invested, and continues to invest, substantial time, money and specialized knowledge into developing its resources, creating a customer base, generating customer and potential customer lists, training its employees, and improving its offerings in the field of ticket brokerage and sport entertainment services. The Employee understands and acknowledges that as a result of these efforts, Employer Group has created, and continues to use and create Confidential Information. This Confidential Information provides Employer Group with a competitive advantage over others in the marketplace.

(c)     Disclosure and Use Restrictions

The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer Group) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer Group and, in any event, not to anyone outside of the direct employ of the Employer Group except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of the President, acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of President acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent

jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to the President.

The Employee understands and acknowledges that his obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he begins employment by the Employer) and shall continue during and after his employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

2.    Restrictive Covenants.

(a)    Acknowledgment

The Employee understands that the nature of Employee's position gives him access to and knowledge of Confidential Information and places him in a position of trust and confidence with the Employer Group. The Employee understands and acknowledges that the intellectual services he provides to the Employer Group are unique, special or extraordinary because of his strong financial background, technical expertise, general knowledge of sporting events, and relationships with potential clients and vendors related to Employer's business.

The Employee further understands and acknowledges that the Employer Group's ability to reserve these for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer Group, and that improper use or disclosure by the Employee is likely to result in unfair or unlawful competitive activity.

(b)    Non-competition

Because of Employer Group's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for the twenty-four (24) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer Group, the Employee agrees and covenants not to engage in Prohibited Activity in any geographic area in which the Employer Group distributes its products or provides its services.

For purposes of this non-compete clause, **"Prohibited Activity"** is activity in which the Employee contributes his knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an

entity engaged in the same or similar business as the Employer Group, including those engaged in the business of ticket brokerage and sport entertainment services (a "**Competing Business**"). Prohibited Activity also includes activity that may require or inevitably require disclosure of trade secrets, proprietary information or Confidential Information.

Nothing herein shall prohibit Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to the President.

(c)   Non-solicitation of Employees

The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or induce the termination of employment of any employee of the Employer Group during twenty-four (24) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer.

(d)   Non-solicitation of Customers

The Employee understands and acknowledges that because of the Employee's experience with and relationship to the Employer Group, he will have access to and learn about much or all of the Employer Group's customer information. "**Customer Information**" includes, but is not limited to, names, phone numbers, addresses, e-mail addresses, order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to the customer and relevant to sales and services.

The Employee understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm.

The Employee agrees and covenants, during twenty-four (24) months, to run consecutively, beginning on the last day of the Employee's employment with the Employer, not to directly or indirectly solicit, contact (including but not limited to e-mail, regular mail, express mail, telephone, fax, and instant message), attempt to contact or meet with the Employer's current, former or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer.

3.    <u>Non-disparagement</u>.  The Employee agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order.  The Employee shall promptly provide written notice of any such order to the President.

4.    <u>Acknowledgement</u>.  The Employee acknowledges and agrees that the services to be rendered by him to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the restrictive covenants and other terms and condition of this Agreement are reasonable and reasonably necessary to protect the legitimate business interest of the Employer Group.

The Employee further acknowledges that the amount of his compensation reflects, in part, his obligations and the Employer's rights under this Agreement; that he has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he will not be subject to undue hardship by reason of his full compliance with the terms and conditions of this Agreement or the Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time.

Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

5.    <u>Remedies</u>.  In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security.  The aforementioned equitable relief shall

be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

6.     Successors and Assigns.

(a)     Assignment by the Employer

To the extent permitted by state law, the Employer may assign this Agreement to any subsidiary or corporate affiliate in the Employer Group or otherwise, or to any successor or assign (whether direct or indirect, by purchase, merger, consolidation or otherwise) to all or substantially all of the business or assets of the Employer. This Agreement shall inure to the benefit of the Employer Group and permitted successors and assigns.

(b)     No Assignment by the Employee

The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

7.     Work Product. Employee acknowledges that all work product created by Employee related to the Employer's business or contemplated business, including but not limited to, any original works of authorship, inventions, discoveries, proposals and ideas, whether alone or jointly with others, shall be deemed a "work made for hire" as defined by the United States Copyright Act and are protected in accordance therewith. To the extent that such work is not, by operation of law, a work made for hire, Employee herby transfers and assigns to Employer all his/her right, title and interest therein.

8.     Warranty. Employee represents and warrants that he is not a party to any non-compete restrictive covenant or related contractual limitation that would interfere with or hinder his ability to undertake the obligations and expectations of employment with the Employer.

9.     Governing Law: Jurisdiction and Venue. This Agreement, for all purposes, shall be construed in accordance with the laws of Florida without regard to conflicts-of-law principles. Any action or proceeding by either of the Parties to enforce this Agreement shall be brought only in any state or federal court located in the state of Florida, county of Palm Beach. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

10.     Entire Agreement. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer Group pertaining to the subject matter hereof and supersedes all prior and

contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

11.    Modification and Waiver.  No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the President.  No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto shall be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor shall the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

12.    Severability.  Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which shall continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.

The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

13.    Captions.  Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

14.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

15.  Tolling.  Should the Employee violate any of the terms of the restrictive covenant obligations articulated herein, Employee hereby agrees that the applicable period of restriction shall be extended by one day for each day the Employee is found to have been in violation of such restriction up to, but not to exceed, the length of time that is equal in length to the period of restriction that would have applied absent the violation.

16.  Attorneys' Fees.  Should the Employee breach any of the terms of the restrictive covenant obligations articulated herein, to the extent authorized by state law, the Employee will be responsible for payment of all reasonable attorneys' fees and costs that Employer incurred in the course of enforcing the terms of the Agreement, including demonstrating the existence of a breach and any other contract enforcement efforts.

17.  Notice.  If and when Employer's employment with Employer Group terminates, whether voluntarily or involuntarily, Employee agrees to provide to any subsequent employer a copy of this Agreement.  In addition, Employee authorizes Employer Group to provide a copy of this Agreement to third parties, including but not limited to, Employee's subsequent, anticipated or possible future employer.

[SIGNATURE PAGE FOLLOWS]

8

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the Effective Date above.

CRUBIN, LLC,
a Florida Limited Liability Company

By: _____
Name:  COLE RUBIN
Title:  Manager

EMPLOYEE

Signature: _____
Jesus "Alex" Escoriaza

**EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT**

This Employee Non-Disclosure and Invention Assignment Agreement (this "Agreement") is entered into by and between CRUBIN LLC, a Florida limited liability company (the "Employer") on behalf of itself, its subsidiaries and other corporate and company affiliates (collectively referred to herein as, the "Company"), and Jesus "Alex" Escoriaza (the "Employee") (the Employer and the Employee are collectively referred to herein as the "Parties") on May 14, 2018.

I am making this Agreement in consideration of my continued employment by the Employer and offering other benefits associated with such position as of October 8, 2012 which I acknowledge to be good and valuable consideration for my obligations hereunder. This Agreement applies to the entire period of my employment and, solely with respect to the subject matter hereof, supersedes, amends and restates all existing and prior employment, covenants and invention assignment agreements in effect between myself and the Company, including, without limitation, my existing employment agreement with the Company, dated as of January 1, 2017 (the "Existing Employment Agreement"), except that any assignments previously made to pursuant to any such agreement shall remain in full force and effect, and to the extent of any inconsistency between this Agreement and any such other agreement, the interpretation that affords the Company the greatest rights shall prevail and control.  For the avoidance of doubt, except as modified by the terms of this Agreement, the Existing Employment Agreement shall otherwise remain in full force and effect.

1.      **Representations and Warranties**

1.1      **No Conflict with any Other Agreement or Obligation**.  I represent and warrant that I am not bound by any agreement or arrangement with or duty to any other person that would conflict with this Agreement.  Except for any obligation described on Exhibit A attached to this Agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that I learned of during any previous engagement, employment or association nor have I had any obligation to assign contributions or inventions of any kind to any other person.  I shall not disclose to the Company or induce the Company to use any proprietary, trade secret or confidential information or material belonging to others.

1.2      **No Infringement of Third Party Intellectual Property Rights**.  I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret or other proprietary right of any third party.

1.3      **No Open Source**.  I represent and warrant that the Inventions will not include any open source software, except with the prior written consent of the Company.

2.      **Confidential Information**

2.1      **Definition of Confidential Information**.  "Confidential Information" means all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any

information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that the Company is obligated to treat as confidential or proprietary, information relating to the Company's corporate finance and liquidity transactions, and any other technical, operating, financial and other business information relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company. Confidential Information also includes Customer Information, which means all non-public personal information that I have previously or may in the future develop or acquire knowledge of during my work for the Company, or from my colleagues while working for the Company. Customer Information shall further include, but is not limited to, names, phone numbers, addresses, e-mail addresses, order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to the customer and relevant to sales and services.

**2.2     Protection of Confidential Information**.  I will use the Confidential Information only in the performance of my duties for the Company.  I will not disclose the Confidential Information, directly or indirectly, at any time during or after my employment by the Company except to persons authorized by the Company to receive this information.  I will not use the Confidential Information, directly or indirectly, at any time during or after my employment by the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company.  I will take all action reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.

**2.3     Return of Confidential Information**.  When my employment by the Company terminates, I will immediately return or destroy all materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium) containing, summarizing, abstracting or in any way relating to the Confidential Information.  At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as Exhibit 2.3, that I have complied with the terms of this agreement.

**2.4     Defend Trade Secrets Act**. I understand and acknowledge that in accordance with the Defend Trade Secrets Act of 2016 that I will not be held criminally or civilly liable under any federal or state law protecting trade secrets for the disclosure of trade secret information that is made: (1) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law, or (2) in a complaint or other document that is filed under seal in a lawsuit or other proceeding. I further understand and acknowledge that if I file a lawsuit for retaliation against the Company related to my reporting a suspected violation of law, I may disclose the Company's trade secrets to my attorney and use such trade secret information in the related court proceeding, so long as I: (1) file any document containing the Company's trade secrets under seal, and (2) do not disclose the Company's trade secrets, except pursuant to court order.

3.      **Inventions**

    3.1      **Definition of Inventions**.  The term "<u>Inventions</u>" means:

    (a)      contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are conceived, created, developed or reduced to practice by me, alone or with others, while I am employed by the Company that are either:  (i) conceived during regular working hours or at my place of work, whether located at Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials; and

    (b)      any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

    (c)      The term "Inventions" specifically excludes any inventions I developed entirely on my own time without using any Company equipment, supplies, facilities or trade secret information, unless (i) the invention related at the time of conception or reduction to practice of the invention to (A) the Company's business, or (B) the Company's actual or demonstrably anticipated research or development, or (ii) the invention results from any work performed by me for the Company.

    3.2      **All Inventions are Exclusively the Property of the Company**.

    (a)      I will promptly disclose all Inventions, in full detail, to persons authorized by the Company.  I will not disclose any Invention to anyone other than persons authorized by the Company, without the Company's express prior written instruction to do so.

    (b)      All Inventions will be deemed "work made for hire" as that term is used in the U.S. Copyright Act, and belong solely to the Company from conception.  I hereby expressly disclaim all interest in all Inventions.  To the extent that title to any Invention or any materials comprising or including any Invention is found not be a "work made for hire" as a matter of law, I hereby irrevocably assign to the Company all of my right, title and interest to that Invention.  At any time during or after my employment by the Company that the Company requests, I will sign whatever written documents of assignment are necessary to formally evidence my irrevocable assignment to the Company of any Invention.

    (c)      At all times during or after my employment by the Company I will assist the Company in obtaining, maintaining and renewing patent, copyright, trademark and other appropriate protection for any Invention, in the United States and in any other country, at the Company's expense.

**3.3**      **Excluded Information**.  On Exhibit B attached to this agreement I have included a complete list, with non-confidential descriptions, of any inventions, ideas, reports and other creative works that I made or conceived prior to my employment by the Company (collectively, the "Excluded Information").  I intend that the items on that list and only the items on that list shall be excluded from the restrictions set forth in this agreement.  I will not assert any right, title or interest in or to any Invention or claim that I made, conceived or acquired any Invention before my employment by the Company unless I have specifically identified that Invention on the attached Exhibit B.  In the event that any Excluded Information is incorporated into any Invention, I hereby grant Company a perpetual, worldwide, royalty free, non-exclusive license to use and reproduce the Excluded Information for commercial, internal business and all other purposes.

**4.**      **Miscellaneous**

**4.1**      **Interpretation and Scope of this Agreement.**  Each provision of this agreement shall be interpreted on its own.  If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law.  In the event that one or more of the provisions contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law, and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

**4.2**      **Remedies.**  I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy.  I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information or Inventions or otherwise violating the provisions of this agreement, and that any such restraint shall be in addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages.  The Company shall not be required to post a bond to secure against an imprudently granted injunction (again, whether temporary, preliminary or permanent).

**4.3**      **Governing Law; Jury Waiver; Consent to Jurisdiction.**  This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the State of Florida applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof.  For all matters arising directly or indirectly from this Agreement ("Agreement Matters"), I hereby (i) irrevocably consent and submit to the sole exclusive jurisdiction of the state and federal courts located in the State of Florida, Palm Beach County (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("Proceeding") directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this Agreement shall be entitled to enforce an order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (ii) irrevocably waive, to the fullest extent permitted by law, any objection that I

may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (iii) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (iv) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (v) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts, and (vi) agree that service of any summons, complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

     **4.4**    **Entire Agreement; Amendments and Waivers.**  This agreement (including Exhibits A and B attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

     **4.5**    **Captions**.  The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

     **4.6**    **Counterparts; Binding Effect.**  This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement.  Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

     **4.7**    **Notices**.  All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given:  (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.  All communications to me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention Chief Executive Officer.

     [Remainder of page intentionally left blank; signature page follows]

By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.

WITNESS:

By: _____

Name: STUART HALBERG

EMPLOYEE:

By: _____

Name: Jesus "Alex" Escoriaza

Accepted by Company:
*CRubin LLC*

By: _____

Name: Brian Levy

Title: General Counsel

6

## *EXHIBIT A*

**Obligations to Other Persons:**
*[Securely attach additional pages if necessary]*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

<u>EXHIBIT B</u>

**Excluded Information:**
*[Securely attach additional pages if necessary]*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

EXHIBIT 2.3
**Form of Acknowledgment**

My employment by _____ (the "*Company*") is now terminated.  I have reviewed my Non-Disclosure and Invention Assignment Agreement with the Company, dated _____ ___, 20__ (the "*Agreement*"), and I swear, under oath, that:

•    I have complied and will continue to comply with all of the provisions of the Agreement.

•    I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company.  I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

_____
Signature

_____
Name (please print clearly)

_____
Address

STATE OF _____ )
                                            ) ss.:
COUNTY OF _____ )

BE IT REMEMBERED, that on this _____ day of _____, _____, before me, the subscriber, a notary public of the State of _____, personally appeared _____, who being by me duly sworn on his oath, deposed and made proof to my satisfaction that (s)he is the person named in the within instrument, to whom I first made known the contents thereof, and thereupon (s)he acknowledged that (s)he signed, sealed and delivered the same as his/her voluntary act and deed for the uses and purposes therein expressed.

_____
[SEAL]                        Notary Public